UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


JOSEPH C. DAVIS                                                    PLAINTIFF


VS.                                   CIVIL ACTION NO. 3:07CV331TSL-JCS


MISSISSIPPI TRANSPORTATION COMMISSION                    DEFENDANT


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Mississippi Transportation Commission for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Joseph C. Davis has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendant's motion is well taken and should be granted.

Plaintiff Joseph Davis, who is black, has brought this action against his employer, the Mississippi Transportation Commission, alleging that he was denied a promotion on account of his race, black, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and his equal protection rights.  On motion of defendant, the court dismissed plaintiff's claims under § 1983 and § 1981, and likewise dismissed his claim for punitive damages. Defendant has now moved for summary judgment on plaintiff's remaining Title VII claim, contending that the undisputed facts establish that, as a matter of law, plaintiff did not suffer an

adverse employment action and hence cannot establish his prima facie case of discrimination.

Under Title VII it is "an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff can prove discrimination through direct or circumstantial evidence. Turner v. Baylor Richardson Medical Ctr., 476 F.3d 337, 343 (5th Cir. 2007). Where the plaintiff lacks direct evidence of discrimination, as is the case here, his claim based on circumstantial evidence is analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Id. Under that framework, a plaintiff must first present a prima facie case of discrimination by establishing that he: "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, [ ] that others similarly situated were treated more favorably." Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir.2001) (internal quotations omitted). If the plaintiff successfully

2

establishes a prima facie case of discrimination, the burden shifts to the defendant to set forth its legitimate, non-discriminatory reason for its decision. Id. "The plaintiff may still avoid summary judgment if [he] demonstrates a genuine issue of material fact whether the legitimate reasons proffered by the defendant are not its true reasons, but instead are a pretext for discrimination." Septimus v. Univ. of Houston, 399 F.3d 601, 609 (5th Cir. 2005).

Plaintiff became employed by the Mississippi Department of Transportation (MDOT) in September 1988 as an Engineer Aide III in MDOT's Roadway Design Division. Over the years, he received numerous promotions, with accompanying pay increases. In May 1989, he was promoted to Engineer Technician I; in July 1992, to Engineer Technician II; in June 1995, to Engineer Technician III; in June 1997, to Engineer Technician Certified; and in February 2004, to Engineer Technician Certified Senior, the top position of the series of Engineering Technicians, and the highest job to which Davis could be promoted based on his education. This is the position he held in June 2005 when he was allegedly passed over in favor of a white co-worker, Dan Smith, for what Davis contends was a "promotion" to the position of "design team leader." Plaintiff claims that whereas he had wanted to become a design team leader and was qualified for the position, he was not selected while the lesser-qualified Smith was chosen. Defendant has moved for

summary judgment, arguing that plaintiff, who has no direct
evidence of alleged discrimination, cannot establish a prima facie
case of discrimination since he cannot show he suffered an
"adverse employment action."

The Fifth Circuit has held that "only 'ultimate employment
decisions' are considered adverse employment actions under Title
VII." Davila v. White, 2003 WL 1103593, 2 (5th Cir. Feb. 13, 2003)
(citing Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir.
1997)). "Ultimate employment decisions include promotion,
compensation, and granting leave." Id. (citing Mattern and Dollis
v. Rubin, 77 F.3d 777, 82 (5th Cir. 1995). See also Green v.
Administrators of Tulane Educational Fund, 284 F.3d 642, 657 (5th
Cir. 2002) ("Adverse employment actions include only ultimate
employment decisions such as hiring, granting leave, discharging,
promoting, or compensating."). And while the Fifth Circuit has
recognized that "courts must consider the broad range of
activities involved in promotion, compensation, and granting
leave," id. (citing National R.R. Passenger Corp. v. Morgan, 536
U.S. 101, 123-24, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)), it
has stressed that "the evidence must be evaluated to ensure that
[the challenged action] does not have merely a 'tangential effect
upon those ultimate [employment] decisions,'" id. (citing Dollis,
77 F.3d at 782). See also Banks v. East Baton Rouge Parish School
Bd., 320 F.3d 570, 575 (5th Cir. 2003) ("Title VII does not . . .

4

address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.").  In this vein, the court has emphasized that while "[d]enials of promotions, pay increases, and leave constitute ultimate employment decisions, . . . efforts to obtain work toward promotions, pay increases, or leave do not."  Id. (citing Mattern, 104 F.3d at 707).  Thus, in Davila, the court held that "[d]enials of overtime, training, and technically advanced work" that might help the plaintiff secure promotions, "are not the equivalent of denials of promotions."  Id. (citing Mattern, 104 F.3d at 708).  See also Dollis, 77 F.3d at 781–82 (finding that employee's allegations that she was not considered for a promotion, was not permitted to attend a training conference, was given false information regarding aspects of her employment, and was denied a desk audit were not actionable adverse personnel actions); Mattern, 104 F. 3d at 708 (holding that hostility from co-workers, having tools stolen, supervisors visiting the plaintiff's home after she called in sick, a verbal threat of being fired, a reprimand for not being at her assigned station, a missed pay increase, and being placed on final warning did not constitute actionable employment actions).

In the case at bar, the parties' controversy centers on whether the position of "design team leader" amounts to a promotion, or is in the nature of a promotion, or whether it is

instead merely a work assignment to which plaintiff's non-assignment does not rise to the level of an adverse employment action. For its part, defendant explains in its motion that the function of MDOT's Roadway Design Division it to design roadway projects around the State. The Division is headed by an engineer (the Roadway Design Engineer) and an assistant engineer (Assistant Roadway Design Engineer). Within the Division are a number of teams which are assigned to various projects. These teams consist of MDOT employees who are either engineers, engineers in training and/or engineering technicians. To ensure the efficient operation of the Division, MDOT designates a "design team leader" for each team, who is charged with coordinating activities related to the projects assigned to his team, and who is under the direct supervision of the Roadway Design Engineer and Assistant Design Engineer. Defendant states that there is no official policy on requirements for the team leader assignment, and that design team leader is not advertised or posted because it is not really a position at all, but rather is merely an assignment that is made for the efficient operation of the Roadway Design Division. In fact, according to defendant, the team leader designation is often based more on the needs of the division than on the abilities or productivity of an employee.

Defendant has presented uncontroverted evidence that team leaders do not receive additional compensation or benefits from

MDOT.  Further, the assignment as a design team leader does not result in any change in the status or position of the employee within the Mississippi State Personnel System, and employees who are named design team leaders have no advantage in promotions within MDOT.  In short, as defendant explains it, it is basically an assignment which adds duties to an employee but adds no benefits or change in employment status.

In response to defendant's motion, plaintiff does not deny that being selected for design team leader would not have affected his pay or status, or his opportunity for advancement at MDOT.  He nevertheless maintains that being a design team leader would have enabled him to seek positions outside of MDOT which required experience that he could have gained as a design team leader and that consequently, defendant's failure to assign him as team leader amounted to an actionable adverse employment action.  The court rejects plaintiff's position.  Aside from the fact that plaintiff has presented no competent evidence that being a design team leader would have created employment opportunities for plaintiff outside of MDOT that would not otherwise have been open to him,[1] even if he had such proof, this still would support a

_____

[1]    Plaintiff has pointed to the deposition testimony of Norris Greer, a black employee in the engineering technician series at MDOT, who stated he knew of a number of design team leaders who had left MDOT and gotten work as consultants in the private sector.  Greer initially testified, in fact, that "everyone that has ever gone there (into private consulting) was design team leaders."  However, Greer then recalled that a LaTonya

conclusion that his non-selection for the team leader position constituted an adverse employment action.

In <u>Hamilton v. Texas Department of Transportation</u>, 85 Fed. Appx. 8, 11-12, 2004 WL 34811, 2 (5th Cir. 2004), the court held that a decision by the Texas Department of Transportation to reclassify the plaintiff, a black employee, from a "lead worker" to an "individual worker" did not qualify as an adverse employment action for purposes of the plaintiff's Title VII retaliation claim, even though the reclassification could possibly have decreased the plaintiff's likelihood of receiving future job promotions.  The court stated,

> In <u>Dollis v. Rubin</u>, we explained that the retaliation provision of Title VII "was designed to address ultimate employment decisions," for example, "hiring, granting leave, discharging, promoting, and compensating." 77 F.3d 777, 781-82 (5th Cir. 1995) (emphasis added) (citation omitted).  Demotions, to the extent that they "affect job duties, compensation, or benefits" have also been considered ultimate employment decisions.  <u>Banks v. E. Baton Rouge Parish Sch. Bd.</u>, 320 F.3d 570, 575 (5th Cir. 2003) (internal quotation marks omitted).  However, we have explained that an employee has not satisfied the second element of his prima facie case under §2000e-3(a) if he alleges only that he suffered a negative employment action "that arguably might have some tangential effect upon [future] ultimate decisions."  <u>Dollis</u>, 77 F.3d at 781-82; <u>see also</u> <u>Mattern v. Eastman Kodak Co.</u>, 104 F.3d 702, 708 (5th Cir. 1997)

---

Graham, who was not a design team leader, had left MDOT and become a consultant in the private sector.  Further, even if it were material, the court notes that plaintiff has not identified any individual who was not a design team leader who tried unsuccessfully to get a private consulting job, much less that such a person failed to obtain an outside consulting job because he had not been a design team leader.

(discussing the genesis of this rule). Therefore, we
have repeatedly held that an employment action that
limits an employee's future opportunities for promotion,
but does not itself affect the employee's job duties,
compensation, or benefits, does not qualify as an
adverse employment action. <u>Banks</u>, 320 F.3d at 575;
<u>accord</u> <u>Walker v. Thompson</u>, 214 F.3d 615, 629 (5th Cir.
2000) (stating that an employer's decision to remove the
employee's major account from her after she filed a
complaint with the EEOC did not qualify as an adverse
employment action, even though the employee's chances of
advancement were decreased); <u>Dollis</u>, 77 F.3d at 782
(holding that employer's refusals either to consider
whether the plaintiff deserved a promotion or to provide
the employee with training opportunities, thereby
decreasing future promotion opportunities, were not
ultimate employment decisions).

<u>Id.</u>  Here, the most Davis claims the evidence tends to show is

that the position of design team leader, or perhaps the experience

one gains as a design team leader, could help him get a consulting

job in the private sector if he chose at some point to leave his

employment with MDOT.  Certainly, if an employment action that

limits an employee's future opportunities for promotion with his

current employer does not qualify as an adverse employment action,

then an employment action that merely fails to help an employee

build his resume for purposes of his pursuing future employment

opportunities with other potential employers cannot so qualify.

Plaintiff argues that even if the position was not, strictly

speaking, a "promotion," it was in the nature of a "promotion" and

thus constituted an adverse employment action.  In this vein, he

analyzes his situation non-selection as a design team leader to

a denial of lateral transfer, which the Fifth Circuit has held

"may be the objective equivalent of the denial of a promotion, and thus qualify as an adverse employment action, even if the new position would not have entailed an increase in pay or other tangible benefits[,] if the position sought was objectively better."  See Alvarado v. Texas Rangers, 492 F.3d 605, 614 (5th Cir. 2007).  The court in Alvarado explained:

> In determining whether the new position is objectively better, a number of factors may be relevant, including whether the position: entails an increase in compensation or other tangible benefits; provides greater responsibility or better job duties; provides greater opportunities for career advancement; requires greater skill, education, or experience; is obtained through a complex competitive selection process; or is otherwise objectively more prestigious.

Id.  While there is evidence that the design team leader position entails greater responsibilities, this fact alone does not create a genuine issue of material fact on whether plaintiff's non-selection for this position was tantamount to the denial of a promotion.  Plaintiff has offered no evidence that the selection process for design team leader is competitive, that the position requires greater skill, education or experience, that it pays more or that it offers greater opportunity for advancement.  And while plaintiff views the position as more prestigious, the court's inquiry is objective, and "neither the employee's subjective impressions as to the desirability of the new position nor the employee's idiosyncratic reasons for preferring the new position are sufficient to render the position a promotion."

Since plaintiff has failed to present sufficient evidence to support his prima facie case, the court need proceed no further with the McDonnell Douglass analysis to conclude that summary judgment is in order. As plaintiff has failed to present evidence failed to create an inference of discrimination, defendant never assumes the burden of articulating a legitimate nondiscriminatory reason for its selection of Smith as design team leader.[2]

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.[3]

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED 17th day of April, 2009.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[2] In his response memorandum, plaintiff has identified two white individuals, Dan Smith and Gregory Waldon, who were selected as design team leaders even though neither had ever expressed any interest in becoming a design team leader and, in plaintiff's view, neither was as qualified as him to be a design team leader. He argues that in contrast to his own qualifications, Smith has no degrees and no certifications, and while Waldon had an AA degree from a community college in drafting and design technology, he was not a certified engineering technician, having failed to exam to become certified. Since it is clear there was no adverse employment action, there is no need to assess the relative qualifications of Davis, on the one hand, and Smith and Waldon, on the other.

[3] The court does note that in his memorandum in support of his response to defendant's motion, plaintiff states that he was paid less than two white co-workers, one of whom is also an engineer technician senior and the other of whom was not. However, plaintiff has not alleged a claim in the case for discrimination in compensation.